IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAM LUJANO, R44373, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN DOE 1, | ) |
| CHRISTINE BROWN, | )  Case No. 25-cv-386-DWD |
| LATOYA HUGHES, | ) |
| JOHN BARWICK, | ) |
| JANE DOE, | ) |
| IDOC, | ) |
| WEXFORD, | ) |
| | ) |
|        Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Adam Lujano, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Pinckneyville Correctional Center (Pinckneyville). (Doc. 22). Plaintiff alleges that the defendants have violated his rights by failing to provide treatment for chronic back and leg pain. The Court found Plaintiff's complaint and amended complaint insufficient to state a claim, and Plaintiff's Second Amended Complaint (Doc. 22) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious,

fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaints

To best understand this Order, it is helpful to have a bit of background information about Plaintiff's previous complaints. This lawsuit concerns care that Plaintiff sought at Pinckneyville Correctional Center from October 5, 2023, through December 13, 2024, when he was transferred to Lawrence Correctional Center. Plaintiff's initial complaint alleged that John Doe 1 (doctor) and Jane Doe (nurse practitioner) denied him adequate care for his chronic pain at Pinckneyville when they refused to request medical records from prior institutions and would not give him adequate medication. The Court found his claims against John Doe 1 and Jane Doe were insufficient as originally pled because they did no more than suggest a mere disagreement with the treatment offered, and did not provide enough insight into the quantity and character of interactions Plaintiff had with the two providers. In the initial complaint, Plaintiff faulted supervisory defendants Christine Brown (a healthcare administrator), John Barwick (Warden), and Latoya Hughes (IDOC Director), for failing to address his complaints and written correspondence to them about his medical needs and the alleged lack of care. The complaint was accompanied by documents that showed both Hughes and Barwick were responsive to his queries, and that Plaintiff did receive care during the time period in question, even if he disputed the sufficiency of care. The Court dismissed the claims

against these supervisory officials because the allegations were insufficient to demonstrate they failed to diligently investigate the situation.

In the Amended Complaint, Plaintiff again named the same defendants with the addition of Wexford Health Sources. As to John Doe 1, Plaintiff indicated he was a doctor who saw Plaintiff only once or twice, and who provide some medical permits but not all of the care he desired. The Court found that the allegations against John Doe 1 supported a medical malpractice or negligence claim at best, but not a deliberated indifference claim. As to Jane Doe, Plaintiff alleged that she did not provide adequate care, but he had very little detail about how often he saw her, or what specifically he complained of during visits. The Court dismissed the claim as insufficient. As to Hughes and Barwick, Plaintiff did not present any new evidence, and the existing evidence from the original and amended complaints still demonstrated that Hughes and Barwick were responsive to Plaintiff's queries even if he did not get the exact outcome he wanted. Plaintiff again faulted Defendant Brown, a healthcare administrator, for failing to coordinate adequate care, but his sole evidence was a single letter he submitted to Brown that was vague about his condition at best. The Court dismissed Brown and indicated if Plaintiff wished to replead the claim he should endeavor to provide more details about how often he communicated with Brown, and what he told her. The claim against Wexford was dismissed because it relied solely on *respondeat superior* to implicate Wexford for alleged misdeeds of individual employees.

In the second amended complaint, Plaintiff's allegations remain largely unchanged. He submitted random excerpts of his medical records and discussed them

in association with some of his allegations, but they do not add anything significant when it comes to the actions of the individual defendants. As for John Doe 1, Plaintiff again argues that the care he provided was inadequate. He faults John Doe 1 for failing to physically examine him, for failing to reinstate treatments from prior facilities, and for allegedly disregarding Plaintiff's complaints of "extreme" pains. (Doc. 22 at 4). As for Jane Doe, Plaintiff alleges he saw her several times throughout 2024, though he is unsure of exact dates. He alleges that every time he saw her he told her he was suffering from pain in his back and legs that was chronic. He claims Jane Doe reviewed his records and should have seen that he had documentation of chronic pain, but she did not provide anything that helped with the pain. From September to December of 2024 Plaintiff was in segregation, which he claims intensified his pain due to a lack of movement, but when he told Jane Doe about this days before his transfer to another prison, she did not help. (Doc. 22 at 6).

As to Hughes and Barwick, Plaintiff complains that he wrote them multiple times but they did not do an adequate job following up on his letters. He complains that after Hughes sent Barwick a letter in June of 2024, nothing further was done. As to Brown, he repeats that he wrote her multiple times, with a second letter being sent in November of 2024. This is the letter he attached to his previous complaints. He alleges that in his letters he informed her of his chronic conditions, and that the over-the-counter medications he was taking were not helpful. He alleges that Brown never helped him and never responded to his letters.

Turning to Wexford, Plaintiff alleges that Wexford's policies and practices violated prison directives and the contract for medical care, but they did nothing to provide better care. He alleges "as a result of Wexford's direct and proximate action and inaction [his] pains and suffering was exacerbated resulting in physical and emotional injuries. A *Monell* claim." (Doc. 22 at 9). At most he alleges that Wexford had policies and procedures under which inmates with serious medical conditions were routinely denied medical care.

In support of the second amended complaint, Plaintiff provided excerpts of his medical record, as well as copies of some of the letters he sent to Hughes and Brown. The attached records show that on October 3, 2023, Plaintiff was issued 60 500mg capsules of acetaminophen. (Doc. 22 at 20). On October 9, 2023, Plaintiff submitted a healthcare request about his back pain and was recorded as a no-show by security staff. (Doc. 22 at 46). On October 10, 2023, Plaintiff submitted a healthcare request about back pain and on October 12, 2023, Plaintiff was seen for law back pain. The nurse noted no visible signs of distress. (Doc. 22 at 44). The nurse noted that Plaintiff wanted treatment for his pain as well as permits for a low bunk, low gallery, a cane, hearing aids, a knee brace, and a heel lift. Plaintiff reported that Tylenol and Motrin do not work for his pain, but that he previously had tramadol. The nurse noted that Robaxin[1] would be reviewed.

On October 19, 2023, a note was made that Plaintiff had been seen twice on nurse sick call for chronic issue, and that he would be seen a third time for the issue. (Doc. 22

---

[1] Robaxin is a muscle relaxer. *See* Drugs.com, Robaxin, https://www.drugs.com/robaxin.html, last accessed December 15, 2025.

at 47). On October 20, 2023, a PA note was made indicating that Plaintiff asked for renewal of his low bunk low gallery permits, but that the reviewer was unable to find any indication that Plaintiff met the criteria for the permits. (Doc. 22 at 47). On October 20, 2023, Plaintiff submitted a note to healthcare complaining that he is on the upper gallery and has back and leg issues. (Doc. 22 at 34). On October 21, 2023, Plaintiff's note was reviewed and the nurse indicated that the doctor already addressed the issue, charted permits, and found that he did not meet criteria for some permits. (Doc. 22 at 33). On October 26, 2023, Plaintiff submitted a note about pain and his permits. (Doc. 22 at 51). On October 27, 2023, a medical progress note indicated that Plaintiff's Robaxin and permits were to be renewed. (Doc. 22 at 50). On November 17, 2023, he was provided a medical permit for a knee brace and shoe insert by Dr. Percy Myers. (Doc. 22 at 32).

On June 8, 2024, Plaintiff submitted a request about back pain, but he was not seen due to line movement. (Doc. 22 at 43). On June 10, 2024, Plaintiff submitted a healthcare request about back pain, and he was seen the next day and provided with ibuprofen. (Doc. 22 at 42). In July of 2024, Plaintiff submitted a note to healthcare asking to be seen, but it was charted the next day that he was not seen due to chow line movement. (Doc. 22 at 35-36). On August 5, 2024, Plaintiff received a referral to physical therapy for his back and knee pain. (Doc. 22 at 49). On September 25, 2024, he wrote a note about back pain and was seen the same day and given acetaminophen[2]. (Doc. 22 at 37-38). On

---

[2] The medical notes indicate Plaintiff was seen for pain and asked for "APAP." (Doc. 22 at 37). The chart further indicates APAP was given. A basic internet search reveals that APAP is common shorthand for acetaminophen. *See* MedlinePlus, Acetaminophen, https://medlineplus.gov/druginfo/meds/a681004.html, last accessed December 15, 2025.

December 10, 2024, Plaintiff reported chronic knee and back pain at the MD call line. (Doc. 22 at 40).

Based on the allegations in the Amended Complaint, the Court will again designate the following claims:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants John Doe 1 and Jane Doe for failing to prescribe adequate pain medications;**
>
> **Claim 2:** **Eighth Amendment deliberate indifference claim against Defendants Hughes, Brown and Barwick for failing to provide adequate responses to Plaintiff's grievances and letters about the lack of care for his chronic pain;**
>
> **Claim 3:** *Monell* **claim against Wexford for maintaining a policy or practice that deprived Plaintiff of effective medication due to high cost.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate

indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

    The Court finds that Plaintiff's Second Amended Complaint is not sufficient to proceed against any of the named defendants under any theory. As the Court has already explained twice in this case, Plaintiff's allegations are very generic in nature and do little to explain the individual actions each defendant took that allegedly caused him harm. For example, Plaintiff admitted in his First Amended Complaint that he only saw the John Doe doctor once or twice. He does nothing significant to enhance his allegations against John Doe. As the Court indicated in the previous Order (Doc. 18), it appears that John Doe is Doctor Percy Meyers, and that Meyers provide at least some of the care Plaintiff sought in the form of permits for a knee brace and heel lifts. An inmate is not entitled to demand specific care, so to the extent he indicates he told John Doe that he needed more or different treatment, this is not a theory sufficient to support deliberate indifference. The Court remains convinced that the facts alleged against John Doe fall short of the high standard for deliberate indifference, which requires conduct more severe than negligence or medical malpractice. This is especially so because Plaintiff alleges he only saw John Doe once or twice.

As to Jane Doe, Plaintiff alleges he saw her a number of times in 2024, though he cannot explain how many times or even approximately when the visits took place. While Plaintiff has not submitted all of his medical records, the excerpts strongly suggest he was receiving responsive care, even if it was not the care he wanted. There were numerous occasions when he submitted healthcare request slips and he was seen the next day. In these instances, he was provided acetaminophen, and a prescription for Robaxin. Against this backdrop, and without more particularized information about the interactions with Jane Doe, Plaintiff has not substantiated a deliberate indifference claim against Jane Doe.

The allegations against Hughes, Brown, and Barwick for their roles in responding to Plaintiff's healthcare requests remain unchanged from the previous complaints. Plaintiff has not supplied any new evidence concerning his correspondence with any of these defendants. For the reasons explained in detail in the Court's first two Orders (Docs. 15, 18) reviewing the adequacy of Plaintiff's pleadings, Plaintiff's Second Amended Complaint remains insufficient to state a claim against Hughes, Brown, and Barwick.

Plaintiff has also attempted to replead his claim against Wexford, but rather than giving allegations unique to his situation about Wexford's policies, practices or customs, his allegations are largely formulaic legalese. Bare conclusory allegations, unadorned by unique facts, are not sufficient to state a claim. At most, Plaintiff alleges Wexford had policies and procedures under which they routinely denied inmates with serious medical conditions care. But the limited records that Plaintiff submitted with his Second

Amended Complaint do not really support this theory. On most of the occasions when he submitted a request to healthcare, he was seen the next day. He started out with acetaminophen, but a few months into his stay he was prescribed Robaxin. He received medical permits for assistive devices about a month into his time at Pinckneyville, and in August of 2024 (less than a year into his stay at Pinckneyville) he was referred to physical therapy. Though the care he received may not have been what he specifically desired, the evidence he provided defeats the notion that he was routinely denied care. Because Plaintiff's allegations against Wexford are conclusory, and the limited medical evidence he submitted does not suggest his needs were ignored, the Court finds he cannot sustain a policy or practice claim against Wexford.

Finally, Plaintiff named the Illinois Department of Corrections as a defendant in the second amended complaint, but the department itself is not a person subject to suit under § 1983. *See e.g.*, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989) (Section 1983 does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties).

In sum, the Court finds that Plaintiff's second amended complaint is insufficient to state a claim against any of the named Defendants for deficient medical care he alleges he received while at Pinckneyville from October 5, 2023, through December 13, 2024. Though Plaintiff claims that the Defendants refused adequate care or did not act on his written pleas for assistance, the evidence he has submitted in support of his pleadings simply does not support these contentions. *See e.g. Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011) (a plaintiff can plead himself out of court by submitting facts that

demonstrate he has no claim); *Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2008) (an inmate can plead himself out of court by alleging facts or submitting documents that defeat an essential element of deliberate indifference). While it is clear that Plaintiff routinely sought care for his chronic pain, there are insufficient allegations to plausibly suggest deliberate indifference to Plaintiff's situation by any one defendant. The records that Plaintiff submitted showed that he received relatively responsive care when he lodged medical requests, even if it was not the exact care he desired. Inmates cannot demand specific care, so the frequent and responsive care defeats his assertion of deliberate indifference. There are also insufficient allegations to suggest a policy or practice claim against Wexford.

Given that this is now Plaintiff's third attempt to file a viable pleading, the Court finds that it is not necessary to afford further opportunities. *See e.g. Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) (amendment would be futile if plaintiff already had multiple chances to cure deficiencies); *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (courts may deny leave to amend if an amendment would be futile); *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011) (leave to amend shall be granted where justice so requires, but leave to amend need not be given if an amendment to the complaint would be futile). As such, this case is now dismissed for failure to state a claim under 28 U.S.C. § 1915A. This dismissal shall count as a strike for purposes of 28 U.S.C. § 1915(g).

## DISPOSITION

Plaintiff's Second Amended Complaint (Doc. 22) is **DISMISSED** with prejudice for failure to state a claim under 28 U.S.C. § 1915A. The Clerk of Court shall enter judgment and **CLOSE** this case.

Plaintiff's Motion for Leave to Proceed IFP (Doc. 21) is **DENIED** as **MOOT** because he has already been granted IFP status and is already making payments towards his initial partial filing fee. Deductions from his account will continue until the full $350 fee has been paid.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $605.00 filing fee irrespective of the outcome of the appeal. See FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: December 17, 2025

/s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge